IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

ZHAO DONG,

                Petitioner,

vs.

TODD BLANCHE, Attorney General,
U.S. Department of Justice, in his
official capacity, et al.,

                Defendants.

8:26-CV-203

MEMORANDUM AND ORDER
GRANTING PETITION FOR WRIT
OF HABEAS CORPUS

The petitioner is a noncitizen currently detained by U.S. Immigration and Customs Enforcement. He seeks a writ of habeas corpus under 28 U.S.C. § 2241. Filing 1. He asserts his detention is unlawful because the government revoked his order of supervision without regard for his due process rights.[1] The Court will grant the petition.

## LEGAL FRAMEWORK

Before discussing the petitioner's particular circumstances, it's necessary to explain the relevant statutory and regulatory framework:

### *Visa and Waiver Applications*

Congress enacted a procedure to grant legal status to noncitizen spouses of United States citizens. 8 U.S.C. § 1154. The citizen-spouse submits an application for a visa on the non-citizen's behalf, known as an I-130 petition. The average processing time for these petitions is 62 months. *Case Processing*

---

[1] Neither party cites the recent decision in *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026), and the Court agrees that this case does not implicate the issues discussed therein.

*Times*, https://egov.uscis.gov/processing-times (last visited May 14, 2026). In some circumstances, part of that process requires the noncitizen to return to his home country.

Sometimes, the noncitizen-spouse is not lawfully in the country, and may be subject to a removal order. The noncitizen can apply to adjust his status by submitting a Form I-485. If a citizen is ineligible for an adjustment of status, he generally must return to his home country to legally enter this country.

But a noncitizen who is subject to a final order of removal is inadmissible to the United States for a period of time, between three and ten years, following the removal. *E.g.,* 8 C.F.R. § 212.2(a). Noncitizens with pending I-130 petitions may obtain a waiver of that inadmissibility by submitting a Form I-121, which grants the noncitizen permission to reapply for admission. And, if the noncitizen is still in the country, he may additionally apply for an I-601A, a Provisional Unlawful Presence Waiver. *See* 8 C.F.R. § 212(e)(4)(iv). Together, these waivers shorten the amount of time the noncitizen must be away from his family in the United States.

The forms must be completed and approved in that order: the I-130 Petition for Alien Relative, the I-212 Application to Reapply for Admission After Deportation or Removal, and the I-601A Application for Provisional Unlawful Presence Waiver. *E.g., Lin v. Nielsen*, 377 F. Supp. 3d 556, 560-61 (D. Md. 2019). If a noncitizen is approved for both an I-121 and I-601A waiver, he must depart the United States to finish the visa process. That departure executes the final order of removal. *Id.* at 561.

### *Orders of Supervision*

An Order of Supervision under 8 C.F.R. § 241.13 is issued when a noncitizen is subject to a removal order, but his removal cannot be effected

within 90 days. The Order can be revoked, and a noncitizen can be re-detained, under two circumstances: (1) the noncitizen violated any of the conditions of his release, or (2) the government identifies "changed circumstances" that indicate a "significant likelihood that the alien may be removed in the reasonably foreseeable future." § 241.13(i). If release is revoked, the government must notify the noncitizen of the reasons for revocation. § 241.13(i)(3). The noncitizen, once in custody, is entitled to a prompt "initial informal interview," and must have an "opportunity to respond to the reasons for revocation stated in the notification." *Id.* The noncitizen "may submit any evidence or information" showing that there is no significant likelihood that he will be removed, or that he has not violated the conditions of his supervision. *Id.*

Willful violations of an order of supervision may result in up to one year in prison. § 1253(b). Continued detention, beyond the removal period, of noncitizens who are likely to be removed in the reasonably foreseeable future is governed by 8 C.F.R. § 241.4. *See* § 241.13(i)(2). The government's failure to follow the regulations set forth in § 241.13 indicates an unlawful detention. *See Rokhfirooz v. Larose*, 804 F. Supp. 3d 1095, 1099 (S.D. Cali. 2025) ("Courts have determined that where ICE fails to follow its own regulations in revoking release, the detention is unlawful and the petitioner's release must be ordered"); *Faysal N. v. Noem*, No. 25-cv-4641, 2026 WL 36066, at *5 (D. Minn. Jan. 6, 2026) (detention is unlawful where "ICE did not comply with its own regulations under section 241.13(i)(2)"); *Phongsavanh v. Williams*, No. 4:25-cv-426, 2025 WL 3124032, at *5 (S.D. Iowa Nov. 7, 2025) (same); *accord Zhu v. Genalo,* 798 F. Supp. 3d 400, 414 (S.D.N.Y. 2025) (detention is unlawful where ICE failed to follow procedures in § 241.4).

## FACTUAL BACKGROUND

The petitioner is a 47-year-old citizen of China who has resided in the United States since 1999. Filing 1 at 1; filing 8 at 4. He was arrested in 2000 and placed in removal proceedings. Filing 8 at 5. He was later released on bond, then ordered removed in 2002. The removal order was administratively final in 2003. Filing 8 at 5. The petitioner did not surrender to ICE as instructed, breaching his bond. Filing 8 at 5. He remained in the country, and married his wife in 2005. His wife became a U.S. citizen in 2010. Filing 1 at 6.

In 2013, the government approved the petitioner's Form I-485, Application to Register Permanent Residence or Adjust Status, and his wife's Form I-130, Petition for Alien Relative, submitted on his behalf. Filing 8 at 6; filing 1 at 23. The petitioner's removal order was stayed until October 2014. Filing 8 at 6. He was placed on an Order of Supervision in December 2013 that was in effect until the government purportedly revoked it on May 7, 2026. *See* filing 1 at 27; filing 8 at 8. The petitioner asserts, and the government does not contest, that the petitioner has, at all times, "faithfully complied" with the Order of Supervision. Filing 1 at 7. That included providing the government with a copy of his Chinese passport. *See* filing 8 at 8; filing 8-13 at 1.

The petitioner's Form I-485 was "administratively closed," without conferring legal status, in 2016. Filing 8 at 6. His Form I-130 remained pending. He submitted his Form I-212, which was approved in 2022. Filing 8 at 6-7. He then submitted his Form I-601A in January 2023—the government asserts that application was denied in January 2026. *See* filing 8 at 7. The petitioner submitted a second Form I-601A, which remains pending.

Part of the I-601A process is submitting biometrics to the government. The petitioner's appointment was scheduled for May 7, 2026. Filing 9-1 at 3. On May 6, the petitioner, who was in the Iowa area for work, *see* filing 8 at 7,

arrived at the Omaha airport to fly to New York for his biometrics appointment. The government had received advance notice that the petitioner would be at the airport, and the petitioner was arrested based on a warrant from 2003. *See* filing 8 at 7; filing 8-16 at 1. The petitioner asserts that, by detaining him and preventing him from attending the biometrics appointment, the government now has cause to deny his I-601A application. *See* filing 9 at 2.

## DISCUSSION

The government in this case asserts that it revoked the petitioner's Order of Supervision on May 7, after the petitioner was detained, because of a change in circumstances that indicate a foreseeable removal to China. *See* filing 8-14 at 1. The petitioner received his notice of revocation on May 7 at 2:20 p.m. Filing 8-14 at 2. The petitioner was provided an informal interview pursuant to § 241.13 also on May 7. *See* filing 8-15 at 1. But the petitioner was arrested on May 6, and the government's record of that arrest asserts the petitioner "was processed as a B&B and a Revocation of Order of Supervision was read and explained to him." Filing 8-1 at 3.

As the petitioner points out—something here doesn't make sense. How the arresting officers were able to read to the petitioner a document that didn't yet exist is unexplained, and unexplainable. Further, while the government asserts there has been a change in circumstances, it hasn't identified it. The government has had the petitioner's passport, and hasn't explained what prevented his removal in the past, nor what has changed that makes it possible now.

It is the government's burden to show a significant likelihood that a noncitizen will be removed. *E.g., Roble v. Bondi*, 803 F. Supp. 3d 766, 772 (D. Minn. 2025). Courts review the government's determination in light of the

regulations instructing ICE on how to make it. *Id.* (citing *Kong v. United States*, 62 F.4th 608, 620 (1st Cir. 2023)). Those factors include the history of the noncitizen's efforts to comply with the order of removal, the history of ICE's efforts to effect removal, and the views of the Department of State regarding the prospects for removal of the noncitizen to the country in question. 8 C.F.R. § 241.13(f). The government has not met its burden here. Its conclusory assertions that the petitioner's passport alone can effectuate his removal to China, *see* filing 8 at 8, are insufficient.

In addition, the government apprehended the petitioner while he was on his way to a necessary appointment to obtain lawful status. When the government interferes with a noncitizen's right to participate in the waiver process, any resulting detention is unjust. *E.g., Lin*, 377 F. Supp. 3d at 564; *Sanchez v. McAleenan*, No. 19-cv-1728, 2020 WL 607032, at *6 (D. Md. Feb. 7, 2020).

For the reasons articulated by the undersigned in *Vang v. Bondi*, No. 0:26-cv-1381, 2026 WL 458195 (D. Minn. Feb. 18, 2026), and for the other reasons stated herein, the petitioner's detention violates his Fifth Amendment due process rights, and he must be immediately released from custody.[2]

---

[2] Several courts have held that the government may not execute an outstanding removal order while a noncitizen is in the process of applying for a provisional waiver. E.g., *Lin*, 377 F. Supp. 3d at 564; *Calderon v. Sessions*, 330 F. Supp. 3d 944, 956 (S.D.N.Y. 2018); *De Jesus Martinez v. Nielsen*, 341 F. Supp. 3d 400, 409 (D.N.J. 2018); *M'Bagoyi v. Barr*, 423 F. Supp. 3d 99, 107-08 (M.D. Pa. 2019); *Jatta v. Clark*, No. 19-cv-2086, 2020 WL 7700226, at *15 (W.D. Wa. July 17, 2020). In this case, the petitioner does not request this Court to stay the removal order, *see* filing 1 at 14-15, so it need not wade into the potential jurisdictional problems that may arise from such requests. *See, e.g., Singh v. Cole*, No. 1:20-cv-763, 21020 WL 7655276,

Accordingly,

IT IS ORDERED:

1.    The petitioner's Petition for Writ of Habeas Corpus (filing 1)
      is granted.

2.    The government shall immediately release the petitioner
      subject to and in accordance with the conditions in his
      preexisting Order of Supervision.

3.    No later than **May 22, 2026**, the government shall file a
      status report certifying compliance with this Order.

Dated this 15th day of May, 2026.

BY THE COURT:

John M. Gerrard
Senior United States District Judge

---

at *3 (W.D. La. Nov. 17, 2020). The foregoing, however, supports the conclusion that the
petitioner's detention is unlawful.